## MATTER OF WILLIAMS

## In Deportation Proceedings

## A-20201790

### *Decided by Board March 30, 1979*

(1) Respondent applying for withholding of deportation to Haiti under section 243(h) of the Act did not meet burden of proving probable persecution by a preponderance of the evidence. *Henry* v. *INS*, 552 F.2d 130 (5 Cir. 1977).

(2) 1976 Amnesty International Report entitled "The Situation in Haiti" was not entitled to more evidentiary weight than that accorded by immigration judge in view of the fact that the report was not significantly probative on the likelihood of persecution to this respondent. *Fleurinor* v. *INS*, 585 F.2d 129 (5 Cir. 1978).

(3) 1976 Amnesty International Report on Haiti does not establish probable persecution by the Haitian Government against either all Haitians or any Haitian who left that country without permission.

(4) Evidence presented by Service, including State Department reports submitted both to the Service and to Congress, found more credible, probative, and timely as to current conditions in Haiti than the 1976 Amnesty International Report.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1152(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Dale Swartz, Esquire
Suite 427
733 – 15th Street, N.W.
Washington, D. C. 20005

Donald I. Bierman, Esquire
Bierman, Sonnett, Beiley &
  Shohat, P.C.
Suite 500
200 S.E. First Street
Miami, Florida 33131

ON BEHALF OF SERVICE:
Goerge W. Masterton
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members. Board Member Farb abstains.

This is an appeal from an immigration judge's decision of June 15, 1978, in which he denied, on reconsideration, the respondent's application for withholding of deportation under section 243(h) of the Immigra-

tion and Nationality Act, 8 U.S.C. 1253(h), but reinstated voluntary departure.[1] The appeal will be dismissed.

The respondent is a 27-year-old native and citizen of Haiti. She entered the United States without inspection in October 1973. An Order to Show Cause was issued on September 25, 1975, but deportation proceedings were delayed to give her the opportunity to apply to the District Director for political asylum and temporary refuge in the United States. Her request was denied by the District Director on December 8, 1976.

At deportation proceedings held in February and April 1977, the respondent conceded deportability under section 241(a)(2) of the Act, 8 U.S.C. 1251(a)(2), but applied for withholding of deportation to Haiti under section 243(h). The evidence presented relating to the section 243(h) application included the respondent's testimony, her Request for Asylum (Form I–589) dated January 5, 1976, which included her own affidavit of the same date, and a "Petition to Withhold Deportation" filed by her counsel on February 11, 1977.

The respondent's testimony and her 1976 affidavit reflect the following information: She was born in La Tortue, Haiti, in April 1951. She has 14 brothers and sisters, 11 of whom still reside in La Tortue.[2] When she was 16 years old, her father's brother was arrested by the Tontonmacoutes. He was jailed, mistreated, and then released, but later died from the beatings received in prison. She did not know what problems her uncle had with the macoutes because these events occurred when she was "a kid." That same year (1968), someone filed a complaint against her father accusing him of being against the government. The respondent stated that that "wasn't true," but he was arrested and jailed for one month before being released.

In 1970, some 18 months after her father's release, the respondent left Haiti for Nassau because her father was constantly being threatened with rearrest and she was frightened. She stated, however, that neither

---

[1] The immigration judge's original order denying withholding of deportation, dated April 1, 1977, was affirmed in a *per curiam* order of this Board on August 22, 1977. An appeal was then taken to the United States Court of Appeals for the Fifth Circuit. In November 1977, the respondent applied to the same court for leave to adduce additional evidence in the administrative proceedings in light of *Coriolan* v. *INS*, 559 F.2d 993 (5 Cir. 1977). That motion was granted on December 13, 1977, and by order of the Board, dated April 27, 1978, the proceedings were reopened and the record remanded to the immigration judge to permit consideration of additional evidence concerning withholding under section 243(h). The petition for review in the Fifth Circuit has been held in abeyance pending disposition of the reopened proceedings.

[2] The respondent's statements concerning her parents were inconsistent. In her 1976 affidavit she indicated that her parents were then living in La Tortue. In her testimony at the deportation hearing, she initially indicated that her mother was dead and her father living in Haiti, but later testified that she believed that her father was also dead. She stated, however, that she had not heard from her family for some time.

she nor anyone else in her family had problems with the Tonton-macoutes and that she had never been threatened by anyone while living in Haiti. She did not know if her father had any more problems with the macoutes after she left, nor whether her family had any problems with the Haitian Government, as only her sister "used to write" and she did not discuss the conditions in Haiti. The respondent stated that she was afraid to return to Haiti because she might be arrested or harmed because the authorities "know [she] left the country [and] . . . because [she's] against them."

The Form I-589 indicated that the respondent believed she would be persecuted because of her political opinions. That form reflected, however, that she had never belonged to any organizations hostile to the interests of Haiti, that she had never expressed any political opinions or acted in a manner which was regarded by the Haitian authorities as opposed to the interests of that country, that her family had never suffered because of her absence, her actions, or her political opinions, and that the then conditions in Haiti did not affect her freedom more than the rest of the Haitian population. She further submitted that the Haitian authorities knew of her request for asylum because of a letter she had written to her father and that she believed she would be killed if returned to that country.[3] Except for these notations, the Form I-589 included no explanatory matters in support of the application (other than the previously discussed affidavit) and no further evidence or documents in support of the claim were alleged to exist.

The final document included in the record at the initial deportation proceeding regarding the persecution claim was the "Petition to With-hold Deportation" prepared by respondent's counsel and filed prior to the April 1977 hearing. That petition alleged that certain factual matters would be shown, which in fact were not thereafter supported in the record and which were in part inconsistent with both the respondent's previous statement and her subsequent testimony. It was alleged, for example, that the respondent's father and uncle were persecuted because they "expressed political opinions and beliefs contrary to those of the existing government," that her uncle was killed because of his statements, and that her father was jailed after his brother's death because of his protests against the government's action. This conflicts with the respondent's actual statement wherein she indicated both that she did not know why her uncle was arrested and that her father was arrested before her uncle's death because someone had falsely accused him of being against the government. It was further alleged in the

---

[3] As the record indicates that the respondent has received no correspondence from her family in some time, the claim that the government is aware of her asylum request because of her letter to her father (whom she is uncertain is alive) apparently is based on conjecture.

prisons [7] and that arrests for security or political reasons have declined substantially. The International Commission of Jurists Report notes that although the "regime [maintains] an authoritarian dictatorship . . . the climate of repression [has] altered perceptibly." A March 8, 1977, letter prepared by the Department of State's Deputy Coordinator for Humanitarian Affairs (ORM) terms the "more extreme charges" of human rights abuses described in the 1976 Amnesty International Report "basically dated, being more descriptive of conditions as they were at times in the 1960's in Haiti. . . ."

The State Department further indicates that its Embassy in Port-au-Prince has reported that "to the best of its knowledge the Haitian government has not in recent years punished returning nationals because they may have left the country without proper documentation." It is suggested that the Haitian Government is not inclined to punish economic refugees because it is "unofficially recognized" that those leaving the country legally or illegally take some of the pressure off the strained economy of that country. The materials reference at least three instances where follow-up inquiries into the status of returned Haitians had been made and in each case those deportees who were located were doing well and reported no persecution. Further, the State Department indicates that the United Nations High Commissioner for Refugees had agreed to review a number of Haitian asylum requests and after reviewing some 175 cases had concluded that "merely departing Haiti and requesting political asylum in the United States [was] insufficient grounds to establish a prima facie claim to such asylum." [8] It is also noted that in February 1977 the Haitian Government gave "explicit written assurances" to the United States Embassy that returning Haitians would not be mistreated and the Embassy has heard no serious allegations of harassment of returning Haitian nationals.

The April 1978 Department of State letter finally indicates that in January 1978 the Haitian Government formally invited the Inter-American Human Rights Commission to investigate human rights conditions in Haiti, that the government had received a mission of the Inter-American Press Association, and that two members of the militia who had beaten an independent journalist in late 1977 had been tried, convicted, and sentenced to four months in prison for assault.

---

[7] The State Department was investigating claims by some of those released during the September 1977 amnesty that eight political prisoners remained in custody. It was, however, noted that the 105 persons who were released that month had been presented to the press and representatives of the diplomatic corps. This action apparently was taken as a result of doubts expressed by Amnesty International after the December 1976 amnesty as to whether named persons had in fact been released.

[8] As reported in an enclosure to a letter from the Acting Assistant Secretary for Congressional Relations, Department of State, to Congressman Fraser, Chairman, Subcommittee on International Relations, U.S. House of Representatives.

We find this evidence significantly more credible and probative regarding the current treatment of returning Haitian nationals by the government of that country than the information and allegations reflected in the 1976 Amnesty International Report. Considering the entire record, we remain convinced that this respondent has failed to meet her burden of establishing eligibility for withholding of deportation to Haiti.

Regarding the specific grounds of appeal cited in respondent's counsel's brief before this Board, for the reasons discussed above we do not find that the immigration judge failed to give "proper weight" to the 1976 Amnesty International Report. Moreover, there is no merit to respondent's claim that the immigration judge relied on matters outside the record in his decision of June 15, 1978. Each of the matters that are specifically alleged not to be supported in the record in fact appear in the materials introduced into evidence by the Service on remand.[9]

We do agree that the immigration judge was guilty of overstatement in opining that "Haitians leave their country not because of political conditions, but because of the economic conditions." That may well be generally true, but the fact that since 1972 the Department of State has recommended in over 240 cases that Haitian asylum seekers be allowed to remain in the United States indicates that a significant number of persons do leave Haiti because of the political conditions in that country. Moreover, we do not find significant regarding the withholding application (as did the immigration judge) the fact that this respondent obtained entry into the United States "via the smuggler route." An alien smuggled into this country may still establish a valid section 243(h) claim to withholding of deportation to a given country. We find neither of these conclusions of the immigration judge, however, sufficiently significant to warrant a remand of the proceedings for further consideration in view of the evidence of record regarding the respondent's withholding claim and our conclusions regarding the merits of that application.

Also referenced in the respondent's brief on appeal is an August 17, 1978, statement by Amnesty International, titled "Possible Refoulement of Haitian Refugees in U.S.A." That apparent press release, which was published after the immigration judge's decision of June 15, 1978, is not properly part of the record before the Board on appeal.[10]

---

[9] For example, the immigration judge indicated that 97 Haitians returned to their homeland from the United States Naval Base in Guantanamo, Cuba, in 1977 were "given twenty dollars and sent home." It is asserted that "[n]one of this is supported by evidence." That information, however, was extracted verbatim by the immigration judge from the April 19, 1978, letter to the District Director in Miami from the Deputy Assistant Secretary of State for Refugee and Migration Affairs (Ex. R-1, p. 6).

[10] A copy of the statement appears with photocopied materials in the record file, but it is not clear when or by whom those materials were added to the record.

The statement notes certain initiatives in the field of human rights taken by the Haitian Government, but concludes there are "still grounds for serious concern regarding legal safeguards and other human rights in cases of a political nature." That organization also states that it has received reports that refugees returned to Haiti have not been seen by relatives several weeks after their arrival and that it "appears that most [returned refugees] have been detained in the military barracks Casernes Dessalines, one of the two main political detention centres in Port-au-Prince."

Considering the record before us, however, even if this document were properly part of the file, we would not find it sufficiently probative regarding the likelihood of persecution of the respondent herein to warrant either the granting of withholding of deportation or the return of these proceedings to the immigration judge for further consideration.

The appeal will accordingly be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within such time and under such conditions as may be set by the District Director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.